FILED

2025 Dec-15 PM 03:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

FILED

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### BIRMINGHAM DIVISION

2025 DEC 15 A 9: 39

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| CHARLES PATE, INDIV. ) | |
| ) | **DEMAND FOR** |
| AND AS CLASS REPRESENTATIVE ) | |
| ) | **TRIAL BY JURY** |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | **CASE NO:** |
| D.R. HORTON, INC., D.R. HORTON, ) | |
| INC.-BIRMINGHAM & D.R. ) | |
| HORTON- ) | |
| HUNTSVILLE | |
| Defendants. | |

## VERIFIED CLASS ACTION COMPLAINT
## AND DEMAND FOR INJUNCTIVE AND DECLARATORY RELIEF

COME NOW the Plaintiffs, by and through their attorney, John Richardson, in the above styled matter and file this Complaint for all homes for the same and/or similar claims described in the class definition against the Defendants as follows:

### PARTIES AND JURISDICTION

### PLAINTIFFS' VERIFIED ORIGINAL COMPLAINT

1  Plaintiffs Charles Pate Individually and as putative class representative for the class described herein complaining of the D.R. Horton entities and the defects in their homes.by and through undersigned counsel, and moves this Honorable Court, pursuant to **Federal Rules of Civil Procedure 23(a), 23(b)(2)**, and applicable Alabama and federal law, for an order certifying this action as a class action, appointing Plaintiff Charles Pate as class representative and John Richardson as Class Counsel and granting injunctive and declaratory relief. In support thereof, Plaintiffs state as follows:

Charles Pate, is a retired U.S. Marine and a Realtor. Mr. Pate owns a home located at 27272 Valamour Ave. Loxley, Alabama 36551. He has a VA loan.

2. D.R. Horton, Inc. is a foreign corporation conducting business in Jefferson, Mobile and Baldwin County, Alabama and may be served with process by serving its registered agent for service of process and or any officer, manager and or director.

3.D.R. Horton, Inc.–Birmingham is an Alabama Corporation conducting business in Jefferson, Mobile, and Baldwin County, Alabama and may be served with process by serving its registered agent for service of process and or any officer, manager and or director. Upon information and belief it is a wholly owned subsidiary of D.R. Horton, Inc.

4.D.R. Horton-Huntsville is an Alabama Corporation conducting business in Mobile and Baldwin County, Alabama. It is probably also conducting business in Jefferson County, Alabama. and may be served with process by serving its registered agent for service of process and or any officer, manager and or director. Upon information and belief it is a wholly owned subsidiary of D.R. Horton, Inc.

5 .All Horton Defendants are collectively referred to as Horton unless specifically referred to in this Complaint.

6. Bethel Engineering, Inc. is an independent contractor and Alabama Corporation conducting business in Baldwin and Mobile County, Alabama and is an unserved coconspirator.

7. Residential Warranty Company, a Pennsylvania Corporation administers and does other tasks as Horton's warranty company and is another unserved coconspirator in their illegal scheme which violates 18 USC 1961 et seq.

8. Defendants, A, B, C, D, E, and/or F being those persons, corporations, firms or entities who were the engineers, designers, developers, contractors, subcontractors, agents, entities or other persons whose conduct caused or contributed, and/or conspired with in the furtherance of the deceptive acts by the Defendant's for which have caused damages to the Plaintiffs and whose identity or identities are not currently known to the Plaintiffs and are not readily ascertainable at this time, but will not be substituted by amendment to this Demand. Should each action become

2

necessary or appropriate, as provided for in Rule 9(h) of the *Alabama Rules of Civil Procedure* they might be added at the Plaintiffs discretion.

## JURSIDICTION

9. .The court has jurisdiction under 28 USC 1332(d). The amount in controversy is in excess of $5 million dollars and there are thousands of homeowners in the class.

### VENUE

10. .D.R. Horton-Birmingham, Inc. is located in Birmingham, Alabama and venue is proper in Birmingham federal courts pursuant to 28 USC 1391 et seq.

## CLASS DEFINITION

11.The class is defined as Horton homeowners whether they bought the home new or purchased it from another buyer, because the warranty automatically applies to the 2nd homeowner within the 10 year warranty period from the initial purchase of the home. The home must be more than 2 years old. The class is limited to Baldwin and Mobile County homeowners and homeowners with VA or FHA guaranteed loans statewide. The class excludes homeowners in Baldwin and Mobile County who are currently in litigation against the Horton entities. Excluded from the class are the Defendants, their officers and directors, any entity in which Horton has a controlling interest, and employees of D.R. Horton entities. The court and its staff are also excluded from the class.

### NUMEROSITY

Upon information and belief there are probably well over 7000 Horton homes that meet the class definitions in Mobile and Baldwin County, Alabama. The purchasers with VA loans are probably at least another 1000 homeowners that meet the definitions upon information and belief.

### COMMONALITY

The homeowners all have the same warranty and the same home purchase agreement with slight changes that are part of the Horton Huntville Home Purchase Agreement. There is a 98.5% probability that none of the homes in Baldwin and Mobile County, Alabama meet gold fortified standard per Dale Zuehls Ph.D.Affidavit attached as Ex. "3". The violations of the building codes are very similar from home to home.

## PREDOMINANCE

The homeowners purchase agreements and warranties are the same or very similar and there are common questions about fact and law with respect to the illegal construction of the homes, the false advertising of gold fortified status for the Mobile and Baldwin County homeowners which is common law fraud and violations of the Alabama Deceptive Trade Practices Act, the false advertising statute, and , whether or not the homes violate the Alabama Deceptive Trade Practices Act pertaining to the actual construction of the homes, wantonness, negligence and negligent hiring. Horton and its co conspirators Bethel Engineering and Residential Warranty Company also violated 18 USC 1961 et seq.

## TYPICALITY

Pursuant to Rule 23b (3) the claims or defenses of Charles Pate are typical of the claims or defenses of the class; and Charles Pate will fairly and adequately protect the interests of the class.

John Richardson is an experienced trial lawyer and he is more than adequate to serve as class counsel and protect the interests of the class.

All of the requirements to certify the case as a class action are met under FRCP 23 et seq and 23(b)(2).

## CLASS OBJECTIVE

The class seeks injunctive and declaratory judgment relief to void Pars.9d, 14. And  15 of the Horton Home Purchase Agreement "HPA", stop Horton from violating the building codes in the construction of the homes and falsely advertising their homes as meeting gold fortified standards.  The Class also seeks to enjoin the illegal portions of Horton's warranty Ex. No. 3, 7, and Conditions Nos. 8 and 9. No monetary damages are sought at this time. The class should be certified under FRCP Rule 23(2) and at later time under FRCP 23a.

The homes do not meet the gold fortified standards and has numerous other building code violations set out herein.  Per the Pates Horton Home Purchase Agreement the Pate's and other do

4

not have a completed home ready for occupancy. Per the Plaintiffs **unrebutted** Expert Affidavits, John Minor, none of the 341 homes inspected by Complete, Inc. are ready for occupancy. None of them meet the gold fortified standards. All of the homes have numerous building code violations. Minor Affidavits and CV **Exs. 4,5, 6, and 7.**

## STATEMENT OF FACTS

This case arises from a standardized, national warranty scheme promulgated by and implemented in an illegal joint enterprise by a national homebuilder, D.R. **Horton, Inc. "DRHI" and its related entities D.R. Horton-Birmingham, Inc "DHBI" and D.R. Horton Huntsville "DRHH" ("Horton")**, which systematically deprives homeowners of their statutory and contractual rights. The Horton Home Purchase Agreement Pars. 9d, 14 and 15 and warranty are illegal, deceptive, unconscionable, and operate in violation of **federal housing laws, HUD regulations,** and **Alabama statutory and common law. Exs. 1,2.** The class also arises from Horton's false claims advertised on MLS listings, advertisements and news articles that the homes are built to gold fortified standards to withstand a Cat 3 hurricane. The homes all contain numerous building code violations which are criminal violations of local, state and federal law. Plaintiffs Experts, Complete, Inc. have inspected 341 homes in over 30 subdivisions in Baldwin and Mobile County, Alabama and 100% of the homes do not meet gold fortified standards and have numerous other similar building code violations. See **Exs. 4, 5, 6 and 7** Per the Plaintiffs Statistician, Dale Zuehls, there is a 98.5% probability that the other approximately 7000 homes in Baldwin and Mobile County, Alabama will have the same types of defects. **Ex. "3".**

The Plaintiff seeks certification of a class under Rule 23(b)(2) in order to obtain **injunctive and declaratory relief** that:

Enjoins Horton from building homes that violate the building codes:

1. **Enjoins Horton from enforcing illegal and unconscionable contract and warranty provisions,** including those that:

   **Par. 9d of the Horton Home Purchase Agreement "HPA" forces homeowners to close even if the punchlist is not complete.**

Par. 14 excludes all monetary damages, consequential damages and punitive damages

Par. 15 is an illegal and unconscionable arbitration clause which references the illegal warranty and requires the homeowner to utilize the AAA for arbitration.

**HORTON SAVINGS CLAUSE GIVES PURCHASERS UNLIMITED REMEDIES**

Par. 16f states if the home is not ready for occupancy within 2 years of the contract date the homeowner's remedies are unlimited. This clause does not take effect until 2 years after the contract date.

**HORTON'S WARRANTY RESIDENTIAL WARRANTY COMPANY**

"RWC"The Horton Warranty from RWC exempts RWC and the Horton Entities from complying with the  building codes during repairs or replacements **Exclusion No. 7;  See Ex. 8**

Require homeowners to bear the cost of completing construction when the builder defaults **Conditions No. 9;**

Require homeowners, at their own expense, to remove structural elements to prove a claim **Section IV-A-5;**

   o  Provide no timeframes or objective standards for repair decisions or approvals it
      simply says **properly substantiated;**


1.      Defendants, A, B, C, D, E, and/or F being those persons, corporations, firms or entities who were the engineers, designers, developers, contractors, subcontractors, agents, entities or other persons whose conduct caused or contributed, and/or conspired with in the furtherance of the deceptive acts by the Defendant's for which have caused damages to the Plaintiffs and whose identity or identities are not currently known to the Plaintiffs and are not readily ascertainable at

this time, but will not be substituted by amendment to this Demand. Should each action become necessary or appropriate, as provided for in Rule 9(h) of the *Alabama Rules of Civil Procedure* they might be added at the Plaintiffs discretion.

2.      Defendants, G, H, I, J, K, and/or L, being those persons, corporations, firms or other entities responsible for creating, causing and/or continuing to commit a deceptive trade act(s), nuisance, trespass, negligence, or wantonness causing damage to the Plaintiffs, and 18 U.S.C. 1961-1968 and whose identity or identities are not currently known to the Plaintiffs and are not readily ascertainable at this time, but will be substituted by amendment to this Demand. Should each action become necessary or appropriate, as provided for in Rule 9(h) of the *Alabama Rules of Civil Procedure*. These Defendants knew or should have known that the building codes were being violated and they were active participants in the pattern of racketeering activities and conspiracies to sell homes that actually did not meet the building code requirements or gold fortified standards along with the Horton entities, Residential Warranty Corporation "RWC" and Bethel. They are not added as Defendants since the Horton entities are responsible for their actions. They were acting as an illegal enterprise to build the homes with building code violations and deny warranty claims.

The amount in controversy is in excess of $270,000,000,000 plus emotional distress, and treble damages, exclusive of attorneys fees, interest and costs.:

## FACTUAL BACKGROUND

3.      D.R. Horton, Inc. "DRHI", D.R.Horton Inc.-Huntsville "DRHH" and D.R. Horton, Inc.–Birmingham "DRHB" are residential construction companies who develop neighborhoods and build individual residential homes for direct sale in Baldwin County, Alabama. D.R. Horton, Inc., D.R.Horton Inc.-Huntsville and D.R. Horton, Inc.–Birmingham, constructed the homes of each Plaintiff in this action. Per its 10k DRHI is in charge of purchasing building materials and overseeing its subsidiaries as set out herein purchasing and approving land purchases and subcontractors setting the limits of their insurance and probably acting as the board of directors for DRHB and DRHH. DRHI is also responsible for risk and litigation management and establishing all internal controls and monitoring their compliance. DRHI officers, managers and

agents also signed the compliance form affidavits to certify that there was compliance with IBHS standards for Gold Fortifications standards, and sent them via mail and or email to IBHS in other states. These were predicate acts along with the false advertisements of gold fortification. These Affidavits were false and misleading and were part of the ongoing scheme to mislead the public and purchasers that the homes met IBHS Gold Fortified Standards.

## HORTON HOME PURCHASE AGREEMENTS

10    .Per the DRHI home purchase agreements, **100%** of the homes are still not ready for occupancy by the Purchasers. Here is an excerpt from **Section 14**: NOTWITHSTANDING THE FOREGOING, THE ARBITRATION PROVISIONS OF THIS SUBSECTION (B) SHALL NOT APPLY IN THE EVENT THAT THE DISPUTE RELATES TO A DEFAULT BY THE SELLER UNDER SECTION 16(F) OF THIS AGREEMENT.

Here is Section **16(f):** f. **Completion of House.** If the House is not Complete at the time that the Purchaser signs this Agreement, Seller shall Complete the House within 2 years after the date that the Purchaser signs this Agreement, subject to extensions for circumstances reasonably beyond Seller's control as determined by Alabama law. For purposes of this subsection (f), "Complete" means that the House is ready for occupancy by Purchaser, has all necessary and customary utilities extended to it, and a certificate of occupancy has been issued. **Notwithstanding any provision in this Agreement to the contrary, including but not limited to Section 18(b), nothing herein shall limit Purchaser's remedies if Seller defaults under this subsection (f).**

### 18 b. Seller's Default.

"Notwithstanding the foregoing, nothing in this subsection (b) shall limit the Purchaser's remedies in the event that Seller defaults under Section 16(f) of this Agreement."

Based on this language the Purchaser Plaintiffs have all causes of action set out in this Demand for Arbitration and the Defendants do not have any defenses including but not limited to the statutes of limitations, contractual defenses, and or common law defenses. The unconscionable contract also survives and inures to 2nd and 3rd home buyers per the contract language.

### 18 USC 1961 ET SEQ VIOLATIONS

Per John Minor, President of Complete, Inc. and plaintiff's engineering expert, Paul Semmes P.E. Ala. due to all of the building code violations and the failure to follow the IBHS

Gold Fortified Specifications as set out in this complaint in later paragraphs; none of the homes were or are ready for occupancy by the Purchasers. These clauses are most strictly construed against the Horton entities who drafted them. This is for the homes actually inspected by Complete, Inc. Statistically it is highly probable that all homes constructed by the Horton Defendants have the same primary issues.

This means that RICO 18 U.S.C. 1961 et seq which calls for automatic treble damages and attorneys fees as well as the Alabama Deceptive Trade Practices Act and the Implied and Express Warranties apply against the Horton Entities. The Home Purchase Agreement states D.R.Horton at the top and NYSE. So D.R. Horton, Inc. is also liable under 18 USC 1961 and the Alabama Deceptive Trade Practices Act. D.R. Horton- Birmingham does not have a legal department or a board of directors that the Plaintiffs Counsel can find. its alleged employees are really employees of the parent corporation. Par. 14 of the Horton home purchase agreement also disclaims any statute of limitations defenses although RICO is a 4 year statute of limitations. The implied warranty under Alabama law is a 4 year statute of limitations. we also plead fraud, concealment of material facts etc. Or in the alternative the discovery rule. There is also no defense to plaintiff's 40% contract for attorneys fees and expenses since the Purchasers has all remedies available to it which would include the 40% attorneys fees incurred by the Plaintiffs as well as any appellate costs for attorneys and expenses.

4.    Bethel Engineering, Inc., "Bethel" is an independent contractor per their 2 contracts with DRHI and DRHB and is the engineering entity who drafted and approved most structural engineering plans, supervised the construction project to some extent since Bethel was assisting in certifying the homes as gold fortified, and allegedly examined and filled out documents with respect to Institute for Business and Homes Safety (IBHS) Fortified Home Technical Requirements, in an effort to have the home receive a Gold Fortified certificate pursuant to IBHS Fortified Technical Requirements. Bethel is part of the ongoing racketeering activity and a coconspirator with the Horton entities and knew that the homes did not meet gold fortified requirements and that the homes had numerous building code violations. In spite of this knowledge Bethel continued to certify homes as gold fortified and did not note any building code violations which are set out below and adopted as if set out in this paragraph. Bethel and the Horton entities are continuing to engage in such conduct at the present time. Bethel Engineering has also gone on warranty inspections for the Horton Defendants in 2025.

9

5.    The Plaintiffs have all taken possession of their homes within the statute of limitations period for all available causes of action. It is still Plaintiffs positions that the Horton entities have waived these defenses per Section 16f of their home purchase agreement which would survive sale to a 2nd or 3rd homeowner which states Purchasers remedies are unlimited which waives any statute of limitations defense.   In the alternative all The homes have 1 to 10 year warranties furnished by the Horton entities and or their administrator, Residential Warranty Corporation.

6.    The Alabama Deceptive Trade Practices Act Section 8-19-14 states: If the contract or warranty is for more than three years, no action may be brought more than one year from the expiration date of the contract or warranty or more than one year after the person  bringing the action discovered or reasonably should have discovered the act or practice which is the subject of the action, whichever occurs first. All of the Plaintiffs had a 10 year warranty even if they did not purchase the home from a Horton Defendant and all of the Plaintiffs brought their action after discovering the act or practice. Denial of a warranty claim is a new and independent act of the Horton Defendants and their co conspirators.  The deceptive acts were unknown to the Plaintiffs as homeowners. The Defendants continue to advertise that Horton homes are gold fortified to this day even though they know that none of the homes meet the specifications for gold fortified.

7.    D.R. Horton, Inc., D.R.Horton Inc.-Huntsville "DRHH and D.R. Horton Inc.-Birmingham "DRHB" represented to the Plaintiffs that they took pride in their work and would build a quality home with good workmanship, demonstrating this point by providing information of prior construction and representations of what their completed construction would look like.

8.    D.R. Horton, Inc., D.R.Horton Inc.-Huntsville, "DRHH" and D.R. Horton Inc.-Birmingham represented to the Plaintiffs that the homes they were purchasing would be Gold Fortified, as described in the Institute for Business and Home Safety (IBHS) Fortified Home Technical Home Requirements. This would make the homes able to withstand a Category 3 hurricane. This designation would also qualify the homes for a property insurance discount of approximately 50%.

9.    The Plaintiffs were provided with a certificate from IBHS, good for 5 years, stating that their homes met the standards of Gold Fortified, as provided in the IBHS Fortified Home Technical Requirements.  This Certificate was provided pursuant to the deceptive   acts and

10

submissions made by D.R. Horton, Inc., D.R. Horton, Inc. Birmingham, D.R.Horton Inc.-Huntsville, and Bethel Engineering, Inc., and or agents of D.R. Horton, Inc., D.R. Horton, Inc.-Birmingham and Bethel Engineering, Inc., .and or their unknown subcontractors and or other independent entities and professionals designated as A-L in paragraphs 6 and 7 as if fully set out herein. The subcontractors are not made parties to this arbitration.

## HORTON VIOLATIONS OF GOLD FORTIFIED COMPLIANCE FORMS

16.    The Horton entities, and Bethel their co conspirator, violated the following provisions of the IBHS. The continuous load path and all compliance forms require the contractor and the evaluator to fill out compliance forms and take pictures during the construction. The Evaluator submits all contractor and engineering forms, the checklist and all photo documentation of continuous load path connections through FOCUS software. This is not what the Horton Bethel contracts call for and, the methodology was never updated in 2017. The Evaluator Bethel Engineering, Inc. or the Horton entities did not take the required set of photos required by the Evaluators requirements of the foundation. The next section requires multiple photographs as set out: 4 Photos of the following of)1 roof to wall, 2) wall to wall, 3) wall to foundation and 4) hold down connections at the corners are also required and were not done based on what Bethel Engineering represented was sent to IBHS and forwarded to the Plaintiffs in discovery. In addition the exterior walls are supposed to 7/16 minimum wood structural panels. DRHI and DRHB and DRHH also signed IBHS compliance forms deceptively and falsely claiming that the roofs, continuous load paths and gable end bracing all complied with IBHS Gold Fortified Requirements. These affidavits were misleading deceptive acts in violations of the DTPA sections cited herein. In the alternative these claims were intentionally fraudulent and the Horton Defendants were negligent and intentionally grossly negligent because they hired Bethel Engineering to perform the evaluations for gold fortifications and knew and or should have known that IBHS regulations did not allow Bethel who performed the structural engineering functions to certify their own designs as gold fortified. The Horton Defendant employees also improperly attested to the way the structure was built to fraudulently induce homeowners, the federal government and mortgage companies to purchase and or make loans.

In addition Windows have to be tested at 1.5 times design pressure as of 2017 as shown in the Coastal Code Supplement.

## DEFECTS COMMON TO THE PLAINTIFFS HOMES WITH 98.5%
## CONFIDENCE FACTOR

These building code violations are addressed later in the demand but are part of these issues as if set out fully herein.

None or Improper Gable End Bracing IBHS Appdx. 5.1 Appendix A and Baldwin County Supplemental Code May 21, 2019 to October 6, 2020. All homes are covered under the Gold Fortified Standards

Roof Underlayment Fasteners undersized req. 12 gauge nail and Horton used 18 gauge 2012 Residential Code, R905.2.7.2 Underlayment and high winds,

Ventilation R.806.1

Ventilation min. area 1/150 R. 806.2 The attics were too small to provide adequate ventilation per the building code.

Flashings installed improperly 2012 Residential Code R. 703.8

Vinyl Side Homes IRC 2012 R. 703.4 used 18 gauge staples on 63 homes not required 16 gauge

Brick Veneer

Our inspections have revealed numerous issues in relation to the installation of brick and components related and necessary for proper brick veneer installation.

One of the issues relating to brick installation is the brick ties. The IRC R703.7.4 requires anchorage embedded in mortar or grout and extending into the veneer.

The type of wall tie observed were corrugated ties that on many occasions were not fully, or even partially, seated in the brick veneer mortar or properly nailed to the sheathing.

Another issue with brick installation is the annular space and weep holes. The annular space between the brick and the building wall surface must be kept clear of grout.

Weep holes use multiple codes that apply when constructing an exterior brick wall that require the holes  spaced every 4 bricks, flashing to sweep moisture to the exterior, and free grout space between the brick and the waterproof barrier.

12

Additionally, the metal lintels installed above the doors and windows are necessary to support the brick above these wall openings. Inspection of the metal lintels does not show the proper length of support above the windows and doors.

The brick violated the following sections of the 2012 Residential Building Code: Sections

R.703.76 Weepholes

R. 609.1.3 Grout Space

R. 703.7.5 Flashing

R. 703.74 Anchorage

R. 703.7.3 Lintels

Storm Water Runoff

International Plumbing Code

Disposal R. 1101.2

R. 401.3 Drainage

Foundation

## CRIMINAL VIOLATIONS OF FHA AND VA REQUIREMENTS BY THE HORTON DEFENDANTS TO INDUCE FHA AND VA LOANS

All of these issues violate the building codes as well as FHA and VA requirements. With respect to VA and FHA loans, these failures to construct the property properly violated the minimum property requirements of the FHA and VA along with the other code violations referenced in this complaint all of which are adopted as if set out herein. The one year warranty certification required to obtain FHA and VA loans was also done to induce the FHA and VA to make the loans. The violations of the VA minimum requirements are set out as follows:

VA Pamphlet 26-7, Revised

Chapter 12: Minimum Property Requirements

12-3

1. Minimum Property Requirement Procedures

Change Date October 18, 2019

• This chapter has been revised in its entirety.(VA's Ch.12 Minimum Property Requirements.)

a. MPRs VA has established Minimum Property Requirements (MPRs) to protect the interests of Veterans, lenders, servicers, and VA. Properties must meet these requirements prior to guaranty of the loan by VA.

VA Pamphlet 26-7, Revised

Chapter 12: Minimum Property Requirements

12-10

**6. Drainage and Topography**

Change Date March 28, 2019

• This chapter has been revised in its entirety.

a. Grading The site must be graded so that it

• provides positive, rapid drainage away from the perimeter walls of the dwelling, and

• prevents ponding of water on the site.

VA Pamphlet 26-7, Revised

Chapter 12: Minimum Property Requirements

**12-12**

**7. Geological or Soil Instability, Subsidence, and Sinkholes,**

**continued**

f. New or Proposed

Property

For new or proposed construction properties, in areas that have a history of geological or soil instability, the builder must submit either:

• a certification that to the best of the builder's knowledge and belief, any geological or soil-related hazard has been compensated for in the engineering design of the improvements and no portion of the construction will rest on fill, or

**Pamphlet 26-7, Revised**

**Chapter 12: Minimum Property Requirements**

**12-27**

14

**20. Hazards**

**Change Date March 28, 2019**

• **This chapter has been revised in its entirety.**

a. **Hazards The property must be free of hazards which may:**

• **adversely affect the health and safety of the occupants,**

• **adversely affect the structural soundness of the dwelling and other improvements to the property, or**

• **impair the customary use and enjoyment of the property by the occupants.**

VA Pamphlet 26-7, Revised

Chapter 12: Minimum Property Requirements


**12-28**

**21. Defective Conditions**

Change Date October 18, 2019

• This chapter has been revised in its entirety.

a. Definition Conditions which impair the safety, sanitation, or structural soundness of the dwelling will cause the property to be unacceptable until the defects or conditions have been remedied and the probability of further damage eliminated. The integrity of the envelope of the structure must not be compromised.

Examples of defective conditions include:

• defective construction,

• poor workmanship,

• evidence of continuing settlement,

• excessive dampness,

• leakage,

• decay, and

• termites.

Pamphlet 26-7, Revised

Chapter 12: Minimum Property Requirements

12-33

## 26. Roof Covering

Change Date March 28, 2019

• This chapter has been revised in its entirety.

a.

**Requirement**

**The roof covering must:**

• **prevent entrance of moisture, and**

• **provide reasonable future utility, durability, and economy of maintenance.**

The Housing Urban Development Standards are basically the same as the VA standards although the ones cited are dated 2023:

Each set of proposed construction exhibits per Chapter 10.10 must include:

• specifications on VA Form 26-1852, Description of Materials, signed and dated by the builder in all cases and by the veteran when one is under contract in an individual case processed as "proposed or under construction". Other specification formats are also acceptable, provided they are signed and dated by the builder and veteran as described above and are sufficiently detailed for VA appraisal and compliance inspection purposes.

• plot plan which includes the location of the well/septic systems, if applicable.

• all exterior building elevations.

• foundation or basement plan.

• plan of all floors.

• sectional wall details.

• **a certification signed and dated by a technically qualified and properly identified individual (such as, builder, architect, engineer, etc.) which states, "I certify that the construction exhibits for (identification of the property by house type, lot, block, subdivision name, etc.) meet all local code requirements and are in substantial conformity with VA Minimum Property Requirements, including the energy conservation standards of the 1992 Council of American Building Officials' Model Energy Code and the**

16

requirement for lead-free water piping." VA will accept <u>HUD Form 92541</u>, Builder's Certification of Plans, Specifications and Site, in lieu of this certification.

The construction exhibits and the actual construction of the property do not meet the local code requirements as set out throughout this complaint . The certifications are false and violate the Alabama Deceptive Trade Practices Act, constitute fraud and fraudulent concealment in the alternative and wantonness along with other causes of action.

**Builders Certification**

# Figure 1:  Builder Information and CertificationsError! Bookmark not defined.

[on builder's letterhead]
**Builder Information and Certifications**
**VA Loan Guaranty Program**

1.  This is to certify that this company:

    a)  Will not use any marketing practices or sales contracts which include features considered by VA to be unfair or prejudicial to veteran-purchasers per Section 9.08 of the VA Lenders Handbook.  I understand that the closing of the loan denotes that the builder has determined that the contract is acceptable to VA.

    b)  **Will construct every property which is to become the security for a VA-guaranteed loan to substantially conform to applicable building codes, applicable VA requirements and the standards of quality as measured by acceptable trade practices.**

2.  In cases processed by VA as "proposed or under construction", I understand that all construction must equal or exceed that shown or described in the construction exhibits used by VA to appraise the property and that, in any conflict between those construction exhibits and the applicable VA minimum property requirements, the latter will govern; and that VA will consider changes to those exhibits to be binding only when they are listed on a properly executed VA Form 26-1844, Request for Acceptance of Changes in Approved Drawings and Specifications; and that I will be proceeding at my own risk in changing or deviating from those exhibits without advance VA approval.

A fully executed VA Form 26-421, Equal Employment Opportunity Certification, and VA Form 8791, VA Affirmative Marketing Certification, is either attached or was previously submitted to VA

The Horton entities actions along with their independent agent Bethel Engineering, Inc. built the homes with the above stated defects and these were violations of 18 U.S.C. 1002 which is set out as follows:

Whoever, knowingly and with intent to defraud the United States, or any agency thereof, possesses any false, altered, forged, or counterfeited writing or document for the purpose of enabling another to obtain from the United States, or from any agency, officer or agent thereof, any sum of money, shall be fined under this title or imprisoned not more than five years, or both.

The Horton entities conduct also violates 18 USC 1010 which is set out as follows:

Whoever, for the purpose of obtaining any loan or advance of credit from any person, partnership, association, or corporation with the intent that such loan or advance of credit shall be offered to or accepted by the Department of Housing and Urban Development for insurance, or for the purpose of obtaining any extension or renewal of any loan, advance of credit, or mortgage insured by such Department, or the acceptance, release, or substitution of any security on such a loan, advance of credit, or for the purpose of influencing in any way the action of such Department, makes, passes, utters, or publishes any statement, knowing the same to be false, or alters, forges, or counterfeits any instrument, paper, or document, or utters, publishes, or passes as true any instrument, paper, or document, knowing it to have been altered, forged, or counterfeited, or willfully overvalues any security, asset, or income, shall be fined under this title or imprisoned not more than two years, or both.

18 U.S.C. 1012 states as follows:

Whoever, with intent to defraud, makes any false entry in any book of the Department of Housing and Urban Development or makes any false report or statement to or for such Department; or

Whoever receives any compensation, rebate, or reward, with intent to defraud such Department or with intent unlawfully to defeat its purposes; or

Whoever induces or influences such Department to purchase or acquire any property or to enter into any contract and willfully fails to disclose any interest which he has in such property or in the property to which such contract relates, or any special benefit which he expects to receive as a result of such contract—

18

Shall be fined under this title or imprisoned not more than one year, or both.

The Horton Defendants actions together and singularly repeatedly also violated 31 USC 3729 and 3802 which can result in a $5000 to $10,000 penalty for each violation and the government recovery of its costs for bringing the action and damages of not less than 2 times its actual damages.

It is reasonably probable that the Horton entities committed these kinds of false statements thousands of times and on every Plaintiffs homes in this lawsuit that had those types of loans.

10.    These actions by unindicted coconspirator Bethel as well as DRHI and the other Horton entities sued herein were illegal, were probably transmitted through the mail or electronically and are additional predicate acts in violation of 18 USC 1961 et seq.

## DECEPTIVE TRADE PRACTICES ACT VIOLATIONS
## ALABAMA CODE SECTIONS 8-19-1 ET SEQ.

11.    The representations and actions by D.R. Horton, Inc., D.R.Horton Inc.-Huntsville, D.R. Horton Inc.-Birmingham, and Bethel Engineering, Inc., or agents of D.R. Horton, Inc., D.R.Horton Inc.-Huntsville D.R. Horton Inc.-Birmingham, and Bethel Engineering, Inc., have (1) caused confusion and misunderstanding as to the certification of their homes, (2) created a representation that their homes have sponsorship, characteristics, uses, benefits and qualities that they do not have, and (3) created a representation that their homes are of a particular standards, quality or grade or that their homes are of a particular style or model, despite being that of another all in violation of the Alabama Deceptive Trade Practices Act 8-19-5 Sections 2,3, 5, 7, 21, and 27. Plaintiffs ask for treble damages since these acts were done intentionally plus 40% attorneys fees and costs. These deceptive acts and representations are still being done and still being advertised as gold fortified.

12.    D.R. Horton, Inc., D.R.Horton Inc.-Huntsville,and D.R. Horton, Inc. Birmingham, engaged in false advertising. **Section 13A-9-42 False advertising.**(a) A person commits the crime of false advertising if, in connection with the promotion of a sale, transfer, consumption or use of property or services, he makes or causes to be made a false or misleading statement in any advertisement addressed to the public or to a substantial number of persons. The Horton Defendants widely disseminated and falsely advertised their homes were gold fortified and continue to make these false representations to the public such as MLS listings.

19

**An excerpt from a current ad for D.R. Horton homes in Magnolia Springs and Semmes Alabama found on November 7, 2023 on the internet which states as follows: . This home is being built to Gold FORTIFIED Home TM certification (See Sales Representative for details.)**

These are sales, promotion, and other practices which mislead and deceived home buyers. The practices included, but are not limited to, false representations as to the quality of homes Horton constructed and guaranteeing that those homes would be "gold fortified". Hortons conduct was deliberate and deceptive and included the employment of agents, captive companies,     such their subsidiary title and mortgage companies, and the independent contractor Bethel and the  warranty company Residential Warranty Company to carry out its elaborate scheme to ensure market share and enhance its profits. In so doing, D.R. Horton, Inc, D.R.Horton Inc.-Huntsville,. and D.R. Horton, Inc.-Birmingham marketed, sold and warranted homes which it knew or should have known did not meet the "gold certification" criteria and had numerous building code violations.

13.     As a direct and proximate and or producing causes  plaintiffs were caused to suffer damages which include but are not limited to to make quiet use of the homes they purchased impossible.

14.     The Plaintiffs Homes do not meet the Gold Fortified Technical Home Requirements for the following purposes:

a.     Installed windows that do not have sufficient water and air filtration ratings;

b.     Roof bracings and strappings are deficient;

c.     Fasteners for roof underlayment are deficient since IRC R.905.2.7.2 requires nails of a diameter of 0.105 in areas where the wind speed can exceed 120 mph;

20

d.  roof and wall flashings were absent, improperly flashed, and taped and or left with nail holes and or otherwise deficient; and some were reverse lapped directing water into the homes as opposed to outside the homes;

e.  flashing between roof and wall siding is required to have a minimum clearance of at least 2 inches to make sure water drains properly; This deficiency was repeatedly observed at wall projections;

f.  the minimum net free ventilation shall be 1/150 of the area of the vented space R. 806.2.

g.  Here is the following admission and false statement from Leslie Guliksen Horton City Manager West Louisiana which also applies to the homes in Baldwin and Mobile Counties.

h.  Leslie: **"No, it has nothing to do with us. I'll tell you what it is: it's the code that we have to build to. We build to the federal mandate code, and we're regulated by federal law. We build to that code, that code was not designed for very humid markets and the man who wrote that law even says that it's not designed for very humid markets but, we still have to adhere to what the ready of the country has been mandated to do."**

i.  Leslie's statement about the requirement to build to a federal mandate was false and misleading. There is no federal mandate;

j.  Insulation shall not block the free flow of air in the attic which is a violation of International Residential Code "IRC" R806.3. Many homes have this issue and all of them have less than the mandated 1/150 area of vented space detailed in part f. This leads to excessive heat and humidity buildup and diminishes the roof life; this is also because heat not being able to escape curls and makes the shingles uneven and unsuitable and heats them beyond their tolerances;

k.  Gable end bracing was not properly constructed was missing the required strongbacks, and other bracing, the Horton Defendants utilized improper size screws and metal bracing and or these items were improperly placed in violation of IBHS 5.1 appendix A;

l.  The Horton entities utilized, purchased and or approved the HUBER Zip System and or water resistant barriers in homes and often the fasteners were overdriven in violation of the American Plywood Association guidelines allowing for water intrusion and the tape used around the edges was not smoothed out also allowing for water intrusion into the homes; upon information and belief the proper tools such as the Zip system tape gun or J Rollers were not used and smoothed out tape was not observed at the residences;

m.  The brick veneer was not properly anchored in mortar or grout extending into the veneer in violation of IRC 703.7.4. Corrugated ties were observed which were not fully or even partially seated and or improperly nailed to the sheathing in the residences with brick;

n.  Grout spaces were not properly cleared of mortar in violation of R. 609.1.3

o.  Weepholes were also placed improperly and did not drain correctly in the brick homes in violation of R. 703.7.6;

p.  Flashing shall be located in the first course of masonry above the foundation and or above ground level to keep the area free of water accumulation and this was not done in the homes in violation of R. 703.7.5;

q.  There were no metal lintels above doors and windows to support the brick in many of the homes in violation of R. 703.7.2 and the spans were too long in violation of R 703.7.3. Therefore it was observed that the homes had cracking around the doors and windows of the homes because the brick veneer was not sufficiently supported;

r.  Per the brick industry association flashing must be used around the roof and intersections of the walls and chimney areas the required flashing ranges from 3 inches for the intersection of the roof and walls to 4 inches around the chimneys and this flashing was also not done in the homes; Counter flashing is also required around the chimneys and this was also not done in the homes observed which means there is at least 95% probability with a margin of error of 20 %;

22

s.   The Foundations on all the Plaintiffs homes have multiple issues which are as follows:

t.   The foundation sites are not properly prepped, or graded; upon information and belief soil compact testing was not done for the home sites and or the subdivision which applies to all homes;

u.   In probably all homes, the foundation mesh, or welded wire fabric (WWF), is not properly placed;

v.   failure to maintain consistent slab thickness;

w.   lack of base material compaction;

x.   poor base material elevation controls; and

y.   improperly installed foundation anchors and post-installed repair anchors in violation of R. 403.1.6. The bolts must be sunk a minimum of 7 inches into the foundations and in many instances the bolts were exposed to the weather;

z.   Cold formed steel framing shall be anchored directly to the foundation and the failures of the Horton entities to do this properly violated Sections R. 505.3.1 and R.603.3.1;

aa.  ACI 318-14 Article 20.6.1.3.1 requires that embedded steel reinforcement where concrete is cast against and permanently exposed to earth have clear cover of three inches (three inches of concrete between the ground surface and the reinforcing). Typical concrete tolerances allow a reduction for clear cover of only 3/8 inch. However, many of the thickened slab edge reinforcing bars and welded wire fabric (WWF) reinforcing sheets were found to have clear cover of zero. Reinforcement was in contact with the vapor barrier material or earth. Failure to encapsulate reinforcing and to provide sufficient cover would be expected to diminish the durability and service life of the foundation system and result in premature deterioration.

bb.  ACI 318-14 Article 25.5.4 prescribes minimum lap lengths for plain wire WWR. The Concrete Reinforcing Specification Institute (CRSI) also recommends the use of WWF fabric for temperature and shrinkage crack control Depending on the design details,

cc.  ACI 318-14 Article 25.5.4.1 may apply which requires a lap length of one cross wire spacing plus two inches. However, the WWF fabric was typically lapped only one crosswire space,. Failure to achieve sufficient lap lengths would be expected to degrade the reinforcement's ability to control concrete floor cracks.

dd.  ACI 318-14 Article 26.6.2.2(a) requires that embedded reinforcement be adequately supported before concrete placement. CRSI also recommends that WWF be sufficiently stiff to remain in position during concrete placement. However, WWF bar chairs were infrequently installed and

ee.  the WWF sheets were regularly deformed downward and in contact with the base layer. Supporting devices for reinforcing bars in downturned perimeter footings were similarly infrequently installed, or absent. Failure to properly position and support the reinforcing would be expected to diminish the durability and service life of the foundation, degrade the reinforcement's ability to control concrete floor cracks, and affect the structural performance of the footings.

ff.  3 ACI 332-14 Article 5.6 provides a similar requirement for concrete cover and tolerance.

gg.  **Standard Tolerances for Concrete Construction and Materials, ACI-117 CRSI Engineering Data Report No. 37 – Reinforcing Steel in Slabs on Grade;**

hh.  ACI 332-14 Article 10.6.1 provides a similar requirement for supporting reinforcement.

ii.  IRC 2018 R506.2.4 requires that WWF be placed between the center to upper one third of the slab for concrete floors on ground.

jj.  **Guide to Design of Slabs-on-Ground, ACI-360, Chapter 4, Fig, 4,1** ACI 332-14 Article 6.2.4 requires areas prepared for the placement of concrete shall be free of debris and contaminants. Such areas shall also be free of water.

kk.  Additionally, ACI 332-14 Article 4.2.4 requires at the time concrete is placed, reinforcement shall be free of materials deleterious to development

of bond strength between the reinforcement and the concrete. areas of the vapor barrier on observed homesites were contaminated with debris, soil, and water

ll.    ACI-117 tolerances allow slab thickness to be reduced by up to 1/4 inch and increased up to 3/8inch.

mm.    Accepted industry recommendations for base materials recommend conformance with ACI

nn.    However visible base layer surfaces exhibited widespread surface elevation variations measuring up to approximately four inches as shown by pictures taken by our experts. This condition is not consistent with expected and necessary compaction and leveling work, and does not satisfy recognized industry standards or tolerances for construction. Failure to adequately compact base layer materials would be expected to cause settlement and failure to level base layer materials would be expected to contribute to crack formation.

oo.    Fasteners for vinyl siding are smaller than required by the International Building Code R. 703.4;

pp.    Bracing of gable end walls are deficient; and

qq.    Varying other Baldwin and Mobile County and municipal county code violations which would inhibit the homes from becoming code compliant (for example, weep holes not being adequately placed, foundation being too low to grade, flashing not being installed, etc.). and violations of the IBHS gold fortified standards;

rr.    Site drainage was not done properly in violation of the International Plumbing Code Section 1101.2 and 1101.3;

ss.    Shower pans were not installed and or improperly installed along with moisture retardant barriers in all types of homes but causing some showers in 2 story homes to fall through the floor; The showers were constructed over

tt.    gypsum-based wallboard, which has not been approved for shower construction since 2006. The

25

uu. showers are missing the vapor retarder required between the wall studs and backerboard. The

vv. shower pans are missing the pre-slope required prior to the installation of a pan liner. Around the

ww.    drain the weep hole protection was missing. The corners and cubs were not sealed correctly.

xx.    The stairs in the homes in Cypress Village, Orange Beach, Alabama, had stairs that were slanted downward in violation of the building code and used cheap carpet that was slick on the stairs in violation of the manufacturer's warnings

yy.    Grinder pumps had electric motors which were too small, were miswired and the proper safety precautions were not followed to shut off the grinder pumps. This required their replacement along with the replacement of plastic piping which melted due to the intense heat. It was also a fire hazard. These actions were observed in multiple subdivisions from Gulf Shores to Fairhope. This is a violation of the state regulations

**Unconscionable Warranty from RWC violating the Deceptive Trade Practices Act and Fraud**

The RWC warranty was not sent to homeowners until 60 days after closing. This was unconscionable and it excluded all warranties which was unconscionable under Alabama Code

Ala. Code § 7-2-316 ("**(1)** Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this article on parol or extrinsic evidence (Section 7-2-202) negation or limitation is inoperative to the extent that such construction is unreasonable.")

The exclusion was unreasonable since it was not given to the homeowners in advance and under the home purchase agreement purchaser has all remedies. The warranty does apply to subsequent purchasers.

The following provisions are unreasonable, unconscionable an adhesion contract and violate the causes of action set out herein:

Failure of the builder to complete an item before the warranty period expires is not considered a defect.

If a major structural component is not causing actual damage there is no warranty.

A code violation has to cause actual physical damage and the Warrantor is only required to repair that and not bring the home up to Code. Exclusion No. 7 of the Warranty

Any form of moisture causing damage is not covered by the warranty.

Major Structural Defects have to have already occurred.

The fact that violations of the building codes that will cause major structural defects that affect safety is irrelevant.

15.     The Plaintiffs trusted D.R. Horton, Inc. and D.R. Horton Inc.- Huntsville and Birmingham and/or agents of D.R. Horton, Inc., D .R.Horton Inc.-Huntsville  and D.R. Horton Inc. Birmingham and relied upon their statement and/or representations.

16.     The Plaintiffs have suffered significant damages in that their homes are not as valuable as they were led to believe, a fact that is made worse when you consider that many of the Plaintiffs have a mortgage through an entity that D.R. Horton, Inc., or a subsidiary of D.R. Horton, Inc., has ownership in, that is more than the current value of the homes.  Additionally, in order to correct the issue, there are significant expenses in the form of construction costs to have the homes meet the standards provided in the IBHS Gold Fortified Technical Requirements.

17.     Prior to the filing of this action, the Plaintiffs have met all the statutory requirements designated in Code of Alabama, 1975, Section 8-19-1, et.   seq., to include those that give grounds for a private right of action in Code of Alabama, 1975, Section 8-19-10. The letters are incorporated hereto but they are not attached.  The Notice letters were sent  pursuant to Code of Alabama, 1975, Section 8-19-10(e) (See Exhibit 1, which is attached and incorporated hereto). It is attached as an exemplar.  Notice has been provided by all households, for each home made the basis of this lawsuit.

27

18.     In addition to the above, there are significant construction defects and areas where the Plaintiffs homes fail to meet the IBHS, County or Municipal Building Codes applicable which is true for all homes.

- 19.    D.R. Horton, Inc., D.R. Horton Inc.-Birmingham, and D.R. Horton-Huntsville or their agents, hired employees to conduct various levels of work related to the construction of their homes and then supervise said employees during the duration of the construction projects. The construction of the Plaintiffs homes that pertains to this is not acceptable as noted in the above paragraphs. They also hired subcontractors but as the general contractor or company in charge of the project they are responsible for the acts, omissions, deceptive acts and negligence of the subcontractors and other professionals such as engineers and violations for inadequately trained and licensed subcontractors.

20.    Based on their contract with D.R. Horton, Inc. An independent company Bethel Engineering, Inc., or their agents, hire employees to conduct various levels of work related to the IBHS Gold Fortified Technical Requirements and the submissions necessary to obtain said Gold Fortified certificates, they then supervise said employees while conducting the plans reviews, inspections and submissions in order to receive the Gold Fortified Certificates.     The     work conducted on Bethel Engineering Inc.'s behalf pertaining to the Plaintiffs homes is not acceptable as noted in the above paragraphs as if set out again herein.

21.    Upon information and belief, D.R. Horton, Inc, D.R.Horton Inc.-Huntsville . and D.R. Horton, Inc.– Birmingham have constructed the Plaintiffs' homes in such a manner to where the water drainage is not draining as designed, and is in fact either not draining, leaving standing water in the yard, or draining to the homes, creating water intrusion issues and/or water nuisance issues in violation of the Plumbing Code Sections 1102 and 1103.

22.    The Plaintiffs have suffered damages as a result of water accumulation, accretion, intrusion, etc. in that their property value has decreased and/or they will incur expenses in an effort to have the water diverted in a different direction or to the intended drainage areas.100 % of the homes tested for water intrusion had code violations and approximately 1/3 of them also already had mold.

23.    Water intrusion. The water intrusion results in mold and mildew and some homeowners have been forced to move out of their homes.

24.    The costs to repair Plaintiffs homes as a result of the actions of D.R. Horton, Inc., D.R. Horton, Inc.-Birmingham, D.R. Horton Inc.-Huntsville and Bethel Engineering, Inc. Horton's co-conspirator , or agents of D.R. Horton, Inc., D.R. Horton Inc.-Birmingham, D.R. Horton Inc.-Huntsville and Bethel Engineering, Inc along with Residential Warranty Corp, and the American Arbitration Association. The costs of repairs which are significant. The Defendants actions have also resulted in a loss of home value.

### COUNT I - DECEPTIVE TRADE PRACTICE
### (Code of Alabama, 1975, Section 8-19-1, *et. seq.*)
### Against D.R. Horton, Inc. and D.R. Horton, Inc.-Birmingham D.R.Horton Inc.-Huntsville

25.    The Plaintiffs incorporate the foregoing paragraphs as though fully set forth herein.

26.    D.R. Horton, Inc., D.R.Horton Inc.-Huntsville and D.R. Horton Inc.-Birmingham and Bethel Engineering, or agents of D.R.    Horton, Inc. and D.R. Horton Inc. Birmingham, D.R. Horton Inc.-Huntsville  have

(1) caused confusion and misunderstanding as to the certification of their homes, (2) created a representation that their homes have sponsorship, characteristics, uses, benefits and qualities that they do not have, and (3) created a representation that their homes are of a particular standards, quality or grade, or that their homes are of a particular style or model, despite being that of another. These defects also include the illegal and  unconscionable adhesion contract warranty that the Horton Defendants utilized from the co conspirator Residential Warranty Corp. "RWC" which was not given to the Plaintiffs until 60 days after closing which was part of the fraudulent concealment and also invokes the discovery rule. The RWC warranty excluded structural defects unless they were actively causing structural damage and presented a danger of physical safety. The RWC warranty also excluded defects and numerous other building code violations as well as sound construction practices. The RWC warranty violates the requirements of the Veterans Administration to build a home to the minimum building standards.

27.    In doing so, D.R. Horton, Inc., D.R.Horton Inc.-Huntsville, and D.R. Horton Inc.-Birmingham, D.R. Horton, Inc., D.R.Horton Inc.-Huntsville, and D.R. Horton Inc.-Birmingham are in violation of Code of Alabama, 1975 Section 8-19-5. This would include their unindicted co conspirators Bethel Engineering, the Residential Warranty Corporation.

28.    Demands have been made in accordance with Code of Alabama, 1975, Section 8-19-10(e), no tender has been extended by the Defendants

29. .    As a proximate result and or producing cause thereof, the Plaintiffs have suffered damages for the loss of value to their home, repair costs, and or replacement value whichever is greater plus emotional distress, attorneys fees, expenses and costs of court.

WHEREFORE, the Plaintiffs respectfully demand judgment against the Defendants for all remedies available under Code of Alabama, 1975 Section 8-19-10(a)(1-3), to include actual damages, , courts discretionary damages (up to three (3) times actual damages), and costs of the action, to include reasonable attorney's fees, and any other relief as deemed just and proper.

## COUNT II - FRAUD
## AS AN ALTERNATIVE COUNT TO COUNT I
### Against D.R. Horton, Inc., D.R. Horton, Inc. –Birmingham, and D.R. Horton Inc.-Huntsville

30.    The Plaintiffs incorporate the foregoing paragraphs as though fully set forth herein.

31.    D.R. Horton, Inc, D.R. Horton Inc.-Huntsville "DRHH. and D.R. Horton Inc. -Birmingham, or agents of D.R. Horton, Inc. and D.R. Horton Inc.-Birmingham, made representations to the Plaintiffs that their residential homes met the Fortified Home Technical Requirements for Gold Fortified, that the homes were in compliance with the municipal and county building codes, and were the product of quality workmanship. The representations were made over the internet and are contained in ads and MLS listings.

32.    The representations made by D.R. Horton, Inc., D.R. Horton Inc.-Huntsville ". and D.R. Horton, Inc.- Birmingham, and or their agents are false with regard to gold fortified status throughout the Horton advertising, sales presentations, and other media sources.

33.    The Plaintiff's relied upon the representations of D.R. Horton, Inc, D.R.Horton Inc.-Huntsville . and D.R. Horton Inc.-Birmingham, and or their agents as evidenced by obtaining certificates of occupancy and gold fortified certificates plus the oral and written representations of Horton agents inside and out of closing including but not limited to the advertisement set out herein stating the homes were gold fortified. "Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." Ala. Code § 6-5-102. The Defendants acts also constitute common law fraud.

34.    The Plaintiffs have suffered damages, to include financial and replacement costs of their homes, as a result of the false representations and emotional distress.

30

WHEREFORE, the Plaintiffs respectfully demand judgment against the Defendants, to include compensatory, and punitive damages, plus interest and costs within the jurisdiction limits of this Court, and any other relief as deemed just and proper.

## COUNT III. - NEGLIGENCE
### Against D.R. Horton, Inc., D.R. Horton, Inc. –Birmingham, and D.R.Horton Inc.-Huntsville

35.    The Plaintiffs incorporate the foregoing paragraphs as though fully set forth herein.

36.    D.R. Horton, Inc., D.R. Horton Inc.-Huntsville, and D.R. Horton Inc.-Birmingham owed a duty to the Plaintiffs.

37.    - D.R. Horton, Inc., and D.R. Horton Inc.-Birmingham, D.R. Horton Inc.-Huntsville "DRHH, and or their agents and subcontractors breached said duty by negligently and/or fraudulently advertising and constructing the home.

38.    As a proximate result:

a.    The Plaintiffs homes, and statistically probably all other Horton homes allegedly built to gold fortified standards in Mobile and Baldwin County, Alabama are not sufficient to handle severe rainstorms or hurricanes and have multiple building code violations. 341 homes have been inspected by Complete, Inc. None are ready for occupancy and none meet the gold fortified standards. All of the homes have other building code violations.

b.    Roof bracings and strappings are deficient in the way they were constructed and nailed and or the proper size lumber for the strongback required was not used in the homes. This has been true of all 300 plus homes inspected and analyzed by the Plaintiffs experts received windows of a lesser quality and installation other than those required to meet gold fortified standards.

c.    Strongback gable bracing is inadequate in design and does not follow the IBHS requirements previously set out and adopted as if set out herein;

d.    Fasteners for roof underlayments are deficient.

e.    The Foundations have multiple issues which are as follows:

f.    The foundation sites are not properly tested, prepped, or graded.

g.    In many homes, the foundation mesh, or welded wire fabric
        (WWF) and the vapor barriers were not properly placed.

h.    Failure to maintain consistent slab thickness.

i.    Lack of base material compaction.

j.    Poor base material elevation controls.

k.    Improperly installed foundation anchors and post-installed repair anchors;

l.    Fasteners for vinyl siding are smaller than required by the building codes
        for all of the approximately 100 homes with vinyl siding and many were
        overshot: The staple size used were also too small and or were improperly
        overshot. The code requires 16 gauge staples and the Horton Defendants
        used 18 gauge staples in violation of R. 703.4

m.    Bracing of gable end walls are deficient. There are no proper strongbacks
        which violates the IBHS requirements for gold fortified homes.

n.    Varying other Baldwin County and municipal county code violations
        which would inhibit the homes from becoming code compliant (for
        example, weep holes not being adequately placed, foundation being too
        low to grade, flashing not being installed, or installed correctly,
        protection/barrier wrap (Tyvek and or other wrap) not properly secured,
        covered with debris and or torn, etc.). The certificates of occupancy on
        all these homes should be void or voided.

o.    The site grading is subpar to the extent that water does not drain as designed.

39.    As a proximate result thereof, the Plaintiffs have suffered damages for the loss of
value to their home;

40.    The Defendants actions were systemic and purposeful and the Plaintiffs are entitled
to punitive damages for gross negligence and or fraud in an amount 10 times greater than actual
damages

32

WHEREFORE, the Plaintiffs respectfully demand judgment against D.R. Horton, Inc., D.R. Horton Inc.-Huntsville, and D.R. Horton Inc.-Birmingham, to include compensatory damages, plus interest and costs within the jurisdiction limits of this Court, and any other relief as deemed just and proper.

## COUNT IV - NEGLIGENT HIRING, TRAINING, AND SUPERVISION
### Against D.R. Horton, Inc., D.R. Horton, Inc.-Birmingham and D.R.Horton Inc.-Huntsville

41.    The Plaintiffs incorporate the foregoing paragraphs as though fully set forth herein.

42.    D.R. Horton, Inc., D.R.Horton Inc.-Huntsville,and D.R. Horton Inc.-Birmingham, employed agents and/or employees in the construction of the residential homes of the Plaintiffs. The Defendants were negligent in hiring these design professionals, and  subcontractors, failed to make sure they were properly trained and following the building codes and negligent in their supervision of their agents, employees, and or subcontractors

43.    The employees and or agents were negligent in the construction of the residential homes of the Plaintiffs, to wit:

a.    The Plaintiffs received windows of a lesser quality than necessary to protect homes from water and air infiltration;

b.    Roof bracings and strappings are deficient. Strongbacks in the gables did not meet the IBHS requirements for all of the Plaintiffs homes;

c.    Fasteners for roof underlayments are deficient.

d.    The Foundations have multiple issues which are as follows:

i.    The foundation sites are not properly prepped, cured    sufficiently, surveyed and or graded;

ii.    In many homes, the foundation mesh, or welded wire fabric (WWF), is not properly placed;

iii.    Failure to maintain consistent slab thickness;

iv.    Lack of base material compaction;

v.    Poor base material elevation controls; and

vi.   Improperly installed foundation anchors and post-installed
      repair anchors;

e.   Fasteners for vinyl siding are deficient.

f.   Bracing of gable end walls are deficient.

g.   Varying other Baldwin County and municipal county code violations which
     would inhibit the homes from becoming code compliant (for example, weep
     holes not being adequately placed, foundation being too low to grade,
     flashing not being installed, or installed correctly, protection/barrier wrap
     (Tyvek and other wrap) not properly installed per the building codes and or
     the manufacturer's instructions for installation, secured or torn, etc.).

h.   The site grading is subpar to the extent that water does not drain as
     designed. Soil Compacting Testing was either not done and or not done in
     sufficient quantities and depths.

44.   D.R. Horton, Inc. D.R. Horton Inc.-Huntsville, and D.R. Horton, Inc.-Birmingham,
and their coconspirators Bethel Engineering, Inc. "Bethel" and Residential Warranty Company
LLC "RWC" were aware of said fraudulent negligent and or grossly negligent construction work,
or should have been aware by exercising reasonable care.

45.   D.R. Horton, Inc, D.R. Horton Inc.-Huntsville. and D.R. Horton, Inc. Birmingham,
Bethel and RWC failed to exercise such reasonable care.

46.   As a proximate result thereof, the Plaintiffs have suffered damages for the loss of
value to their home including repair and replacement costs whichever is greater as well as
emotional distress

WHEREFORE, the Plaintiffs respectfully demand judgment against D.R. Horton, Inc.,
D.R. Horton Inc.-Huntsville, and D.R. Horton Inc.-Birmingham, to include compensatory
damages plus interest and costs within the jurisdiction limits of this Court, and any other relief as
deemed just and proper.

**COUNT V - WANTONNESS**
**Against D.R. Horton, Inc. D.R. Horton, Inc.–Birmingham and  D.R.Horton Inc.–Huntsville**

47.    The Plaintiffs incorporate the foregoing paragraphs as though fully set forth herein.

48.    The Defendants D.R. Horton, Inc. D.R. Horton Inc.-Huntsville,. and D.R. Horton, Inc.-Birmingham wantonly constructed the Plaintiffs homes.

49.    As a proximate result:

    a.    The Plaintiffs received windows of a lesser quality than necessary to help stop air and water infiltration into the homes

    b.    Roof bracings and strappings are deficient.

    c.    Fasteners for roof underlayments are deficient.

    d.    The Foundations have multiple issues which are as follows:

        i.    The foundation sites are not properly surveyed, prepped, or graded; and were often not allowed to cure sufficiently before building on them started

        ii.    In many homes, the foundation mesh, or welded wire fabric (WWF) are not properly placed; Vapor barriers often were covered with debris

        iii.    Failure to maintain consistent slab thickness;

        iv.    Lack of base material compaction;

        v.    Poor base material elevation controls; and

        vi.    Improperly installed foundation anchors and post-installed repair anchors;

    e.    Fasteners for vinyl siding are deficient as they are too small per the building code on all vinyl sided homes inspected by the Plaintiffs:

    f.    Bracing of gable end walls are deficient.

    g.    Varying other Baldwin County and municipal county code violations which would inhibit the homes from becoming code compliant (for example, weep holes not being adequately placed, foundation being too low to grade, flashing not being installed, or installed correctly, protection/barrier wrap

(Tyvek wrap) not properly secured or torn, etc.). inadequate gable bracing, inadequate roofs and continuous load paths and the other violations set out herein plus emotional distress:

h.    The site grading is subpar to the extent that water does not drain as designed.

50.    As a proximate result thereof, the Plaintiffs have suffered damages for the loss of value to their home and or repair and or replacement costs whichever is greater and emotional distress.

WHEREFORE, the Plaintiffs respectfully demand judgment against D.R. Horton, Inc., and D.R. Horton Inc.-Birmingham, to include compensatory, and punitive damages, plus interest and costs within the jurisdiction limits of this Court, and any other relief as deemed just and proper.

## COUNT VI - BREACH OF CONTRACT AND TORTIOUS INTERFERENCE
### Against D.R. Horton, Inc.-Birmingham D.R.Horton Inc.-Huntsville

51.    The Plaintiffs incorporate the foregoing paragraphs as though fully set forth herein.

52.    The Plaintiffs and D.R. Horton, Inc.-Birmingham and or D.R.Horton Inc.-Huntsville had a contract wherein the entities agreed to construct a home in exchange for valuable consideration. 2nd purchasers still had the illusory and alleged benefits of the warranty from RWC. Adam Hamby one of the Plaintiffs in another lawsuit and represented by another attorney, filed yet another warranty claim on his roof and an attorney from DRHI contacted him improperly and told him DRHI would fix his roof only if he dropped his lawsuit. This was attempted tortious interference with the attorney client contract and may be an ongoing scheme by DRHI,et al. This is an alternative pleading and most portions of the Plaintiffs contracts are unconscionable

53.    The Plaintiffs paid the funds to D.R. Horton, Inc.-Birmingham and or D.R. Horton Inc.-Huntsville as agreed upon.

54.    D.R. Horton, Inc.-Birmingham and or D.R. Horton Inc.-Huntsville failed to perform in that the homes were not properly constructed.

55.    As a proximate result thereof, the Plaintiffs have suffered damages for the repair value and or the loss of value to their home and emotional distress.

WHEREFORE, the Plaintiffs respectfully demand judgment against the Defendant plus interest and costs within the jurisdictional limits of this Court.

## COUNT VII - BREACH OF EXPRESS WARRANTY
## AGAINST D.R. HORTON, INC., D.R. HORTON, INC.-BIRMINGHAM and D.R. Horton Inc.-Huntsville

56.    The Plaintiffs incorporate the foregoing paragraphs as though fully set forth herein.

57.    D.R. Horton, Inc.-Birmingham and or D.R. Horton Inc.-Huntsville expressly warranted to the Plaintiffs they would construct a quality home using good workmanship. One portion of The warranty was for up to 10 years. This gave the Plaintiffs up to 10 years plus one year after the warranty expired to file suit. Residential Warranty Co. LLC "RWC" of Harrisburg, Pa. was responsible for administering the warranties. RWC's warranty was not mailed to homeowners until after closing. The warranty contained exclusions such as the Horton entities failure to complete portions of the construction were not covered by a warranty unless the homeowner completed the construction of the home. RWC also inadequately repaired homes or systematically drug out the repairs so it could then claim that the warranty had expired on that portion of the home.

58.    D.R. Horton, Inc.-Birmingham, D.R. Horton Inc.-Huntsville breached said express warranty as set forth above along with their coconspirator RWC.

59.    As a proximate result thereof, the Plaintiffs have suffered damages for the repair and loss of value to their home.

WHEREFORE, the Plaintiffs respectfully demand judgment against the Defendant plus interest and costs within the jurisdictional limits of this Court.

## COUNT VIII - BREACH OF IMPLIED WARRANTY OF WORKMANSHIP., HABITABILITY AND FITNESS FOR A PARTICULAR PURPOSE
## Against, D.R. Horton, Inc., D.R. Horton, Inc.-Birmingham D.R. Horton Inc.-Huntsville

60.    The Plaintiffs incorporate the foregoing paragraphs as though fully set forth herein.

61.    D.R. Horton Inc.-Birmingham, D.R. Horton Inc.-Huntsville impliedly warranted to the Plaintiffs that they would build a quality home in a good workmanlike manner and the Plaintiffs trusted the statements of D.R. Horton Inc.-Birmingham and or D.R. Horton Inc.-Huntsville.

62.    D.R. Horton, Inc. and D.R. Horton Inc.-Birmingham and or D.R. Horton Inc.-Huntsville breached said implied warranty of workmanship by not constructing the house in a good workmanlike manner.

37

63.    As a proximate result thereof, the Plaintiffs have suffered damages for the loss of value to their home.

**All causes of action under the Alabama Deceptive Trade Practices Act in all preceding paragraphs as if set out herein only require producing cause.**

WHEREFORE, the Plaintiffs respectfully demand judgment against the    Defendant plus interest and costs within the jurisdictional limits of this Court.

## COUNT IX. - RACKETEERIING INFLUENCED CORRUPT ORGANIZATIONS ACT 18 U.S.C. 1961-1968

64.    The Plaintiffs incorporate the foregoing paragraphs as though fully set forth herein. Congress inserted a liberal construction provision into RICO, which mandates that RICO's text "shall be liberally construed to effectuate its remedial purposes." Organized Crime Control Act § 904(a). This Court has affirmed that RICO's "'remedial purposes' are nowhere more evident than in the provision of a private right of action," *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 498 (1985), for those injured by enterprises be they "ostensibly legitimate or admittedly criminal," *United States v. Turkette*, 452 U.S. 576, 585 (1981).

Section 1964(c) provides that "[a]ny person injured in his business or property by reason of a violation of [RICO] may sue. . . ." (Emphasis added.) The ordinary meaning of "injure" is to "cause harm or damage to" or to "hurt." *American Heritage Dictionary* 676 (1969); *Webster's Third New International Dictionary* 1164 (1971) ("to impair the soundness of "; "to inflict material damage or loss on"); *Ballentine's Law Dictionary* 626 (3d ed. 1969) as cited in *Medical Marijuana, Inc. v. Horn.* 23–365 604 US ____ ( 2025).

65.    The Horton Defendants scheme to sell homes as gold fortified was widely disseminated on the internet and in newspaper publications etc. One of the ads which the Horton Defendants are still running is set out in an earlier paragraph.

66.    18 U.S.C. 1962(a) prohibits the investing of proceeds derived from a pattern of racketeering activity into an enterprise, § 1962(c) prohibits the conducting of the affairs of an enterprise through a pattern of racketeering activity, and § 1962(d) prohibits conspiring to violate § 1962(a), (b), or (c). .Each of the Horton Defendants along with their independent counterparts in the racketeering activities Bethel, an independent contractor, other subcontractors, RWC the independent warranty company utilized by the Horton Defendants committed wire fraud and mail fraud multiple times for every home in this lawsuit. The AAA was part of the enterprise by falsely

advertising even its staff was neutral and unbiased. This is set out in the AAA Rules and is disseminated through the internet. The subcontractors identified as A-L in this complaint aided and abetted the enterprise and knew or should have known that they were violating the building codes and are responsible under 18 U.S.C. as set out above but are not made parties to this lawsuit as there is no valid arbitration agreement between the subcontractors and the Plaintiffs.

67.    The enterprise engaged in a pattern of racketeering activity. and conspiracy to defraud homeowners into believing their homes were gold fortified and met the requirements of the building codes. The enterprises purpose was to sell homes and make a profit which the Defendants and increase their profits further by using substandard materials and not properly repairing homes under their warranty claims as set out below along with using the AAA and their undisclosed evident partiality to the Horton Defendants and the construction industry. Material omissions can be fraudulent if they are intended to create a false impression." *Langford v. Rite Aid of Alabama, Inc.*, 231 F.3d 1308, 1312 (11th Cir. 2000). "[a] defendant may be guilty of conspiracy even if he did not commit the substantive acts that could constitute violations of §§ 1962(a), (b), or(c)." *United States v. Browne*, 505 F.3d 1229, 1264 (11th Cir. 2007). Moreover, the Eleventh Circuit has instructed that "what is required to support a claim of RICO conspiracy is that plaintiffs allege an illegal agreement to violate a substantive provision of the RICO statute." *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1269 (11th Cir. 2004) (emphasis original).The Horton Defendants agreed to the overall objective of the conspiracy along with their co conspirators Bethel Engineering, Inc. "Bethel" , Residential Warranty Corp."RWC" and the AAA. *Republic of Panama v. BCCI Holdings* (Luxembourg) S.A., 119 F.3d 935, 950 (11th Cir. 1997). However, the circumstantial evidence must demonstrate "that each defendant necessarily must have known that the others were also conspiring to participate in the same enterprise through a pattern of racketeering activity." Since the only Defendants are Horton companies that have the same ownership and apparently the same board of directors the necessary evidence has been shown by the Plaintiffs for Horton. Bethel has 2 contracts with Horton Defendants. One contract is for the structural engineering of the plans and the 2nd contract is to help the Horton Defendants to evaluate Bethel's own plans and the actual construction to meet gold fortified standards. **RWC's warranty contains numerous illegal terms such as an exclusion allowing the Horton Defendants to fail to conform to the code.** The RWC warranty is expressly incorporated into the Horton Arbitration Clause Par. 15 of Horton's Home Purchase Agreement. . Per the 2024 Horton 10k, D.R. Horton,

Inc. has a construction defect claim budget of $949.5 million dollars and a warranty claim budget of over $566 million dollars.

68.     The AAA is aware of Horton's goals and in their June 12, 2025 seminar one of the topics was choosing the right arbitrator. In 2023, one of the seminar topics was "Collaborating to Minimize the Risks of Arbitration with the Construction Team. These topics and others show undisclosed evident partiality in violation of 9 USC 10 (a) (2) and are proof that the AAA is complicit with helping the Horton Defendants to avoid paying for construction defects in full. The Horton Defendants have also not complied with the new May 1, 2025 AAA Rules or the old rules which also apply to consumers. Horton is required to pay a registration fee and have their arbitration clause approved by the AAA. Per the 11th Circuit in the case of *Merritt Island Woodwerz v. Space City Credit Union* 137 F. 4th 1268 (11th Cir. May 25 2025) Horton has waived its right to fix those errors.

69.     Documents produced by Bethel were utilized by the Horton entities to obtain gold fortified certifications for the homes. Those documents and pictures taken by Bethel were either mailed and or emailed to IBHS to obtain the gold certifications. These are predicate acts for RICO and constitute wire and mail fraud in violation of federal statutes 18 USC 1341 and 1343. These violations and the building code violations were a proximate cause of damage to the Plaintiffs and the average repair cost is in excess of $271,000. A study by the University of Alabama found that having a gold fortified designation increased the value of a home by 7%. The homes do not meet the gold fortified standards since they do not have properly designed and or constructed strongbacks in the gables nailed together in a certain way to increase the strength and there are many other deficiencies set out above in the building code violations. The failure to meet gold fortified standards if it is properly adhered to raises the costs of property insurance by 50%.

70.     Each of the Horton entities were part of an ongoing racketeering enterprise. The Horton entities and Bethel, and RWC were involved in a criminal conspiracy to defraud the homeowners, even 2nd and 3rd home buyers into purchasing their homes as gold fortified. The Horton Defendants violated numerous sections of the building codes as set out herein, Bethel observed at least a portion of the building process and knew or should have known that the Horton entities and their subcontractors and design professionals were violating numerous sections of the building codes as set out herein. These entities were all part of a criminal conspiracy in violation of 18 U.S.C. 1962(d).

71. The failure to disclose and or repair the defects constituted material omissions of fact which is fraud and also involved mail and or wire fraud.

72. An additional part of the conspiracy was that The Horton Defendants, Bethel and RWC either refused to repair and or did shoddy and or incomplete repair work to the homes. The Horton Defendants Bethel and RWC then systematically delayed the start and or completion of warranty work. Then the Horton Defendants Bethel and RWC stated that the warranty had expired and they were not obligated to perform the work or the defects were excluded under the warranty definitions. These actions also constituted a pattern of racketeering activity and were the standard way these entities did business with respect to warranty claims.

73. A classic example of Horton's warranty work was performed at 23923 Cottage Loop Drive Orange Beach, Alabama. Horton's attorney looked at the inside of the home and based on her warranty claim agreed to repair the home. The Horton contractors did not pull the required permit from the city, and performed some repairs to the inside of the home. The water leaks were from outside the home. Once Horton received our experts damage estimate of approximately $200,000 plus new air conditioning to ventilate the inadequately ventilated attic that is too small per the building codes and is a defect in all of the homes the Horton Defendants and their subs stopped work, and refused to repair the home. **Ex. "9"** The Horton entities refused to repair the outside of the home where the water barriers were reverse lapped causing water from outside to flow to the inside of the home. Horton's subcontractor also did not properly repair and or ventilate the attic of the home.

74. The homes in Orange Beach Cypress Village are also built too closely together in violation of the fire code and the homes were not built according to the plans submitted to the City of Orange Beach, Alabama. The actual plans built to did not contain wide enough streets and sufficient parking. The homeowner referenced in **Ex. "9"** is a plaintiff in another lawsuit.

75. 18 U.S.C. 1961 has a 4 year statute of limitations from the date the homeowners knew or should have known of the fraud.

76. The Plaintiffs are entitled to treble damages, litigation expenses prejudgment and post judgment interest and their attorneys fees including appellate fees if necessary.

WHEREFORE, the Plaintiffs respectfully demand judgment against the Defendants for treble damages for their repair and or replacement costs whichever is greater plus diminution of

value and emotional distress, and attorneys fees plus interest and costs within the jurisdictional limits of this Court.

## COUNT X - DECLARATORY RELIEF UNDER 18 U.S.C. 1964(a) AND ALABAMA CODE SECTION 6-6-220 ET SEQ

77.    The Plaintiffs request that the arbitration panel grant declaratory relief that the Horton Defendants have violated 18 U.S.C. 1962(c)- 1964 and find that the Horton Defendants licenses to do business in the State of Alabama should be cancelled because of the continuing harm to the Plaintiffs including but not limited to the loss of value to their homes because of the Horton entities construction of new homes which do not meet the gold fortified standards and the dangers of flying debris from these homes in the event of a hurricane which may physically injure the Plaintiffs and the general public.

78.    The Plaintiffs seek declaratory judgment under Alabama Code Section 6-6-220 et seq that the Home Purchase Agreements are unconscionable as also found by the Supreme Court of South Carolina with respect to an almost virtually identical contract. The Alabama Contract leaves the Plaintiffs with no remedy and no causes of action for damages in the first 2 years after they sign the purchase contract for their homes. Paragraph 14(c) of the home purchase agreement utilized by D.R. Horton is set out here:

> c. Disclaimer and Limitation on Seller's Liability. THE LIMITED WARRANTY GIVEN TO PURCHASER BY SELLER PURSUANT TO SUBSECTION 14a ABOVE IS TO THE EXCLUSION OF ALL OTHER WARRANTIES, EXPRESSED OR IMPLIED, AND SELLER HEREBY DISCLAIMS ANY AND ALL SUCH OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY WARRANTY OF HABITABILITY, MERCHANTABIITY OR FITNESS FOR A PARTICULAR PURPOSE. IN ADDITION, SELLER MAKES NO REPRESENTATION OR WARRANTY WHATSOEVER REGARDING THE PAST, PRESENT OR FUTURE CONDITION OR USE OF ANY LANDS OR AREAS SURROUNDING THE PROPERTY OR IN THE VICINITY OF THE PROPERTY. **AFTER CLOSING, SELLER SHALL HAVE NO LIABILITY OR OBLIGATION TO PURCHASER OF ANY NATURE WHATSOEVER EXCEPT AS PROVIDED IN THIS SECTION 14**

OF THIS AGREEMENT, IN SECTION 9(d) ABOVE AND IN SELLER'S DEED TO PURCHASER. SELLER SHALL NOT BE LIABLE FOR ANY REASON, UNDER ANY CIRCUMSTANCES, TO PURCHASER OR ANYONE CLAIMING THROUGH PURCHASER FOR MONETARY DAMAGES OF ANY KIND, INCLUDING SECONDARY, CONSEQUENTIAL, PUNITIVE, GENERAL, SPECIAL, OR INDIRECT DAMAGES.

This paragraph is another of the many unconscionable actions of the Defendants in their home purchase agreements.

79. The declaratory judgment also seeks to void paragraph 1 of the home purchase agreement which states as follows:

84. **Section 7-2-315** **Implied warranty: Fitness for particular purpose.**

Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under Section 7-2-316 an implied warranty that the goods shall be fit for such purpose.

The Defendants knew or should have known that the Plaintiffs wanted to live in properly built homes with good construction and adequate warranties. The Defendants contract takes away these statutory safeguards and is unconscionable for these reasons as well entitling the Plaintiffs to all of their damages. The Defendants violation of the warranty provisions was a proximate cause of the necessitation of the Plaintiffs needed home repairs, replacement costs whichever is greater, dimunition of value plus punitive damages and attorneys fees along with prejudgment and post judgment interest.

## COUNT X1.
## DISCOVERY RULE

Plaintiffs have all remedies due to the fact that their homes were not completed and ready for occupancy within 2 years of their contracts. However, Plaintiffs also plead the discovery rule with respect to all causes of action and could not have discovered that their homes were not up to the Codes. Plaintiffs also plead fraudulent concealment to the Plaintiffs, inspectors, appraisers,

The Veterans Administration, Housing and Urban Development, the Federal Housing Authority and IBHS. Plaintiffs further plead that the fraud, violations of the DTPA and other causes of action were continuing frauds at all material times.

## COUNT XII.

## REQUEST FOR EXPEDITED TRIAL AND CLASS CERTIFCATION ON LIABILITY AND INJUNCTIVE RELIEF ISSUES

There are over 7000 Horton homes in Baldwin and Mobile County Alabama. If there are more than 40 plaintiffs that is sufficient for class certification. The requirements for class certification have been met under Rule 23. The class is too numerous to join all parties, and common questions of law and fact predominate based on the facts that none of the homes meet the standards for gold fortification, there are numerous other common building code defects, such as the use of improper materials.

## COUNT XIII.

## CLASS CERTIFICATION ONLY ON THE ISSUES OF INJUNCTIVE RELIEF

The only certification sought at this time is for injunctive relief to stop Horton from violating the building codes and VA Certifications in its construction of the homes and make the homes ready for occupancy.

## COUNT XIV.

## DECLARATORY JUDGMENT

Pursuant to FRCP Rule 57 the Plaintiffs ask the court for a declaratory judgment that Pars. 9d, 14, and 15 of Horton's Home Purchase Agreement, **Ex. "1" are illegal and unconscionable since these paragraphs allow Horton to brazenly ignore the building codes.** fail to meet gold fortified standards, and exempt the Horton Defendants from all monetary damages, consequential damages, punitive damages and any liability for 2 years if the homes are not ready for occupancy.

## COUNT XV.

## DECLARATORY JUDGMENT

## LACK OF CONSIDERATION AND MUTUALITY OF CONTRACT

Horton forces you to close even though the punch list is not complete and puts high pressure on you per the Affidavit of Kelly Childress, a Horton home owner and former Horton closer. **Ex. "10"**. Once you close per Par. 14 the Homeowner has no rights to any type of monetary damages

for 2 years and must go to arbitration. Horton is not required to go to arbitration and can sue the homeowner for any reason. Par. 15 is silent on the requirement for Horton to go to arbitration. That is a lack of mutuality. The failure of consideration can void an arbitration clause. *Cherdak Am. Arbitration Ass'n Inc.*, v. 443 F.Supp.3d 134 (D. D.C. 2020); *9 USC 2,*

Courts must place arbitration agreements on an equal footing with other contracts, **Buckeye Check Cashing, Inc. v. Cardegna**, 546 U. S. 440, 443, and enforce them according to their terms, **Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.**, 489 U. S. 468, 478. Section 2's saving clause permits agreements to be invalidated by "generally applicable contract defenses," but not by defenses that apply only to arbitration or derive their meaning from the fact that an agreement to arbitrate is at issue. *Doctor's Associates, Inc. v. Casarotto*, 517 U. S. 681, 687 (1996). Pp. 4–5.

This is also the holding of CNU of Alabama, LLC v. Cox; UHG I LLC v. Cox, [Ms. SC-2024-0060, SC-2024-0061, Nov. 8, 2024] __ So. 3d __ (Ala. 2024) at p. 8: The United States Supreme Court divides challenges to the validity of arbitration provisions into two types. Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 444 (2006). *The first attacks the validity of arbitration provisions specifically and is resolved by courts.Id.* The Horton Arbitration Clause Par. 15 specifically references construction defects and warranties. That clause is what is attacked by Pate et al since construction defects also reverts to the illegal warranty provisions.

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the*

*revocation of any contract or as otherwise provided in chapter 4.* AT&T

Mobility LLC v. Concepcion, 563 U.S. 333 (2011).

Wherefore Premises Considered Plaintiffs request all actual damages under all causes of action, all treble and or punitive damages, prejudgment and post judgment interest, and reasonable attorneys fees of 40% plus an additional $225,000 if there is an appeal to the court of appeals and an additional $350,000 if there is an appeal to the Alabama Supreme Court, any appeal to any federal court, federal court of appeals and or the U.S. Supreme Court shall result in a required payment to Plaintiffs Counsel of $750,000 to $950,000 plus expenses and costs of court and for such other and further relief both at law and in equity to which the Plaintiffs may be justly entitled.

Respectfully Submitted,

/s/ John D. Richardson (RIC018)
22765 US 98 Suite A-1
Fairhope, AL 36532
john@richardsonlawllc.com
phone: (251) 338-1695
fax: (251) 517-7253

